RE: TULSA CIVIL SERVICE COMMISSION JURISDICTION
ATTORNEY GENERAL HENRY HAS ASKED ME TO PERSONALLY RESPOND TO YOU ON HIS BEHALF WITH REFERENCE TO YOUR REQUEST CONCERNING THE NOVEMBER, 1987 LEASE AGREEMENT BETWEEN THE CITY OF TULSA AND THE TULSA AIRPORT IMPROVEMENTS TRUST, AND ITS IMPACT UPON THE JURISDICTION OF THE TULSA CIVIL SERVICE COMMISSION OVER EMPLOYEES AFFECTED BY THE LEASE. I UNDERSTAND FROM THE MATERIALS ENCLOSED WITH YOUR LETTER THAT THE TULSA CITY ATTORNEY HAS FORMALLY ADVISED MR. GREGORY ROBINSON, CHAIRMAN OF THE TULSA CIVIL SERVICE COMMISSION, THAT THE TRANSFER IS LEGAL UNDER THE LOCAL CHARTER. YOU INQUIRE, ON MR. ROBINSON'S BEHALF, WHETHER THAT LEGAL ADVICE IS CORRECT.
I HAVE EXTENSIVELY REVIEWED THE MATERIALS THAT HAVE BEEN ENCLOSED WITH YOUR LETTER, AND HAVE STRAINED TO FIND A WAY THAT THIS OFFICE COULD PROVIDE YOU WITH SOME HELPFUL LEGAL ADVICE, WITHOUT AT THE SAME TIME VIOLATING THE REQUIREMENTS OF 74 O.S. 18B, WHICH PERMITS THE ATTORNEY GENERAL TO ISSUE ADVICE ONLY REGARDING MATTERS OF PURE QUESTIONS OF LAW. UNFORTUNATELY, A RESPONSE WITHOUT TAKING INTO ACCOUNT NUMEROUS FACTUAL ELEMENTS IS SIMPLY IMPOSSIBLE. HOWEVER, THE FOLLOWING GENERAL COMMENTS ARE OFFERED FOR WHATEVER LIMITED ASSISTANCE THEY PROVIDE.
ATTACHMENT B OF THE MATERIALS ENCLOSED WITH YOUR LETTER APPEARS TO BE A COPY OF ARTICLE XVII OF THE TULSA CITY CHARTER. THAT ARTICLE CONTEMPLATES THE FORMATION OF A TULSA AIRPORT AUTHORITY. SECTION SEVEN THEREOF STATES THAT THE AUTHORITY SHALL HAVE THE POWER TO OPERATE ANY AND ALL AIRPORTS AS A SEPARATE UTILITY. SECTION EIGHT OF ARTICLE XVII OF THE CHARTER GENERALLY STATES THAT "ALL AIRPORT OFFICERS AND EMPLOYEES SHALL BE SUBJECT TO THE PROVISIONS OF ARTICLE XVI OF THE CHARTER OF THE CITY OF TULSA." THAT ARTICLE, IN TURN, GOVERNS THE PERSONNEL DEPARTMENT AND CIVIL SERVICE COMMISSION OF THE CITY. THE COMMISSION APPEARS TO BE GENERALLY INVESTED WITH AUTHORITY OVER EMPLOYMENT MATTERS PERTAINING TO THE MUNICIPAL EMPLOYEES WHO ARE IN THE "CLASSIFIED SERVICE" OF THE CITY, AS THAT TERM IS DEFINED IN SECTION FIVE.
IN NOVEMBER OF 1987, THE CITY AND THE AUTHORITY ENTERED INTO A MEMORANDUM OF UNDERSTANDING AND AMENDED LEASE WITH WHAT IS IDENTIFIED AS A THIRD PARTY, THE TULSA AIRPORT IMPROVEMENTS TRUST. THE TULSA CITY ATTORNEY'S LETTER OF NOVEMBER 12, 1987 INDICATES THAT THE CITY HAD PREVIOUSLY LEASED THE AIRPORT PROPERTY TO THE TRUST ON OCTOBER 1, 1978. THE LETTER FURTHER RECITES THAT THIS PRIOR LEASEHOLD ARRANGEMENT CONTEMPLATED THAT THE CITY WOULD CONTINUE TO OPERATE THE AIRPORT. I DO NOT HAVE A COPY OF THOSE MATERIALS, AND CANNOT COMMENT THEREON EXCEPT TO NOTE THE STATEMENTS OF THE CITY ATTORNEY.
UNDER THE NEW DOCUMENTS, THE PARTIES APPEAR TO BE AMENDING THE LEASE AGREEMENT PREVIOUSLY ENTERED INTO BY THEM PRIMARILY SO THAT MUNICIPAL EMPLOYEES ARE NOW TO BE TRUST EMPLOYEES FOR ALL PURPOSES. I PRESUME FROM THE CONTRACTUAL DOCUMENTS AND CORRESPONDENCE ENCLOSED THAT THIS TRANSFER CONTEMPLATED TERMINATING THESE EMPLOYEES FROM THEIR POSITIONS WITH THE CITY, WITH PROVISIONS WRITTEN INTO THE AGREEMENTS APPEARING TO ATTEMPT TO GUARANTEE THE AFFECTED EMPLOYEES CONTINUED EMPLOYMENT OPPORTUNITIES WITH THE TRUST ENTITY, AS WELL AS SOME PROTECTIONS REGARDING CONTINUED RETIREMENT AND OTHER EMPLOYMENT RELATED BENEFITS.
APPARENTLY, FROM THE ENCLOSED CORRESPONDENCE FROM MR. ROBINSON AND THE TULSA CITY ATTORNEY, THE EFFECT OF THIS TRANSFER IS PERCEIVED TO BE THAT OF DIVESTING THE COMMISSION OF ANY AUTHORITY OVER THESE EMPLOYEES. A POINT TO REMEMBER, IN THAT REGARD, IS THAT ALL OF THE CHARTER PROVISIONS REFERRED TO BY MR. ROBINSON DEAL WITH THE TULSA AIRPORT AUTHORITY. HOWEVER, THE PUBLIC TRUST THAT IS IDENTIFIED IN THE CONTRACTUAL DOCUMENTS AS BEING THE NEW EMPLOYER IS NOT THE TULSA AIRPORT AUTHORITY. RATHER, IT IS THE TULSA AIRPORT IMPROVEMENTS TRUST, APPARENTLY A SEPARATE ENTITY FROM THE AUTHORITY. I CAN TELL YOU GENERALLY THAT IN OKLAHOMA, IT IS WELL RECOGNIZED THAT A PUBLIC TRUST ORGANIZED AND OPERATED PURSUANT TO TITLE 60 OF THE OKLAHOMA STATUTES IS A SEPARATE AND DISTINCT LEGAL ENTITY FROM THE PUBLIC BODY THAT SERVES AS ITS BENEFICIARY, FOR MANY LEGAL PURPOSES. I ALSO RECOGNIZE THAT GIVEN THE PROPER EVIDENTIARY BASIS, ONE COULD MAKE THE ARGUMENT THAT THE GENERAL CHARTER TERMS CONCERNING AIRPORT EMPLOYEES LIMITS THE ABILITY OF THE CITY TO ENTER INTO AGREEMENTS DETRIMENTALLY AFFECTING EMPLOYEE RIGHTS.
IN THIS CASE, THERE IS NO WAY THAT I CAN MAKE THE KINDS OF LEGAL JUDGMENTS NECESSARY TO COMPLETELY RESPOND TO YOUR LETTER WITHOUT A MUCH MORE DETAILED FACTUAL REVIEW, NOT ONLY OF THE DOCUMENTS OF RELEVANCE, BUT ALSO OF THE ATTENDANT FACTUAL CIRCUMSTANCES. HOWEVER, IT APPEARS THAT MR. ROBINSON MAY NOT BE ADEQUATELY TAKING INTO CONSIDERATION THE DIFFERENCE THAT THE SEPARATE LEGAL STATUS OF THIS TRUST MIGHT HAVE ON HIS CONCERNS. I CAN ONLY SUGGEST THAT MR. ROBINSON ASK FOR FURTHER INFORMATION FROM THE CITY ATTORNEY, OR, IN THE ALTERNATIVE, THAT HE SEEK INDEPENDENT LEGAL ADVICE FROM AN ATTORNEY WHO IS PERMITTED BY LAW TO MAKE THE TYPE OF FACTUAL REVIEW THAT IS NECESSARY TO FULLY ANSWER HIS CONCERNS. I HOPE THAT THIS INFORMATIONAL LETTER IS OF SOME ASSISTANCE TO YOU. PLEASE FEEL FREE TO CALL ME IF YOU HAVE ANY QUESTIONS ABOUT THE LETTER OR THE REASON THAT I CANNOT GIVE MORE CONCRETE ASSISTANCE.
(MICHAEL SCOTT FERN)